**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **DONYA LEIGH ANDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION 2:01cv894-ID** |
| **v.** | ) | **(WO)** |
| | ) | |
| **UNUM LIFE INS. CO. OF AMERICA,** | ) | |
| **d/b/a UNUM PROVIDENT CORP.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Before the court is Plaintiff Donya Leigh Anderson's ("Anderson") motion for

attorney's fees and costs, made pursuant to 29 U.S.C. § 1132(g)(1).  (Doc. No. 97.)

Anderson submitted a brief in support of her request for attorney's fees and costs, together

with affidavits from her counsel detailing the hours expended and services rendered.

(Doc. No. 98.)  Defendant Unum Life Insurance Company of America ("Unum") filed a

brief opposing Anderson's motion.  (Doc. No. 99.)

Anderson seeks $126,538.75 in attorney's fees and $6,986.51 in costs in this

lawsuit which arises under the Employee Retirement Income Security Act ("ERISA"), 29

U.S.C. §§ 1001-1461.  Previously, in this litigation, Anderson obtained a favorable

judgment against Unum on her claim for benefits made pursuant to 29 U.S.C.

§ 1132(a)(1)(B).  (See Mem. Op. and Order & Final Judgment (Doc. Nos. 95-96).)  The

court found that Unum wrongfully denied Anderson's claim for long-term disability

benefits under a group policy offered by her employer, Shaw Industries, Inc., and awarded

Anderson $6,099.97 in benefits due to her, plus prejudgment interest.  (Id.)  The court also

taxed costs against Unum.  (Doc. No. 95 at 62.)

In the same memorandum opinion and order, the court directed Anderson and

Unum "to confer in an effort to reach an agreement" on the issue of attorney's fees.[1]  (Id.

at 61.)  If, however, the parties' efforts were unsuccessful, the court set a deadline for

Anderson to file a motion for attorney's fees, together with supporting documentation and

a brief.  (Id. at 61-62.)  The parties were unable to resolve the issue of attorney's fees on

mutually acceptable terms; hence, Anderson filed the instant motion.  After careful

consideration of the arguments of counsel, the relevant law and the record as whole, the

court finds that Anderson's motion is due to be granted in part and denied in part.


## II.  JURISDICTION

This court exercises removal jurisdiction over this ERISA action pursuant to 28

U.S.C. § 144l(a) and 29 U.S.C. § 1332(e).  Venue is proper in the Middle District of

Alabama pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

---

[1] See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) (observing that "[i]deally . . .
of course, litigants will settle the amount of a fee").

### III. BACKGROUND AND PROCEDURAL HISTORY

The facts and procedural history of the case have been set out in detail in previous orders and opinions entered by the Eleventh Circuit Court of Appeals and this court and need not be repeated here in full.  See Anderson v. UnumProvident Corp., 369 F.3d 1257 (11th Cir. 2004); Anderson v. Unum Life Ins. Co. of America, 414 F. Supp.2d 1079 (M.D. Ala. 2006); Anderson v. UnumProvident Corp., 322 F. Supp.2d 1272 (M.D. Ala. 2002).[2] The court, however, provides a brief synopsis of the prior proceedings in order to place the present motion in proper context.

Seeking an award of long-term disability benefits under her employer's plan, which was administered by Unum, Anderson originally filed her complaint in state court, alleging state law claims.[3]  Unum timely removed this case on the ground that Anderson's state law claims were preempted by ERISA, see 28 U.S.C. § 1441, but, alternatively, on the ground that jurisdiction was proper pursuant to 28 U.S.C. § 1332(a) (diversity jurisdiction).  Unum ultimately prevailed on its argument of ERISA preemption, but that success was preceded by several years of extensive litigation on the subject.  (See Doc.

---

[2] These published opinions are docketed in the clerk's file as document numbers 39, 83, 95.

[3] As noted in its earlier opinion on the merits (Doc. No. 95), the court presumes that the long-term disability insurance policy at issue constitutes the entirety of the ERISA "plan."  See 29 U.S.C. § 1002(1) (ERISA refers to and governs "employee welfare benefits plan[s]").  Consequently, in this opinion, the court uses the words "policy" and "plan" interchangeably; thus, references to the policy may be construed as references to the "plan" and vice versa.

Nos. 3, 8, 10, 15, 28, 29, 30, 36-38.)  Namely, Anderson heavily contested ERISA

preemption.  Anderson contended that her employer did not "establish or maintain" an

employee welfare benefits plan, or, alternatively, that the policy at issue fell within

ERISA's safe harbor provisions, which exempt certain employee welfare benefits plans

from ERISA.  (See, e.g., Doc. No. 12 at 2); (Doc. No. 28.)  Discovery was conducted on

the issue of subject matter jurisdiction; briefs and evidence were filed; and various orders

were entered.  This laborious process culminated in the court's entry of a memorandum

opinion and order, filed in November 2002, in which the court found that ERISA

completely preempted Anderson's state law claims.  (Doc. No. 39.)  Although initially

denying Anderson's request for an interlocutory appeal, ultimately, the court entered final

judgment on its ERISA preemption ruling pursuant to Rule 54(b) of the Federal Rules of

Civil Procedure, which allowed Anderson to pursue an interlocutory appeal.  (See Doc.

Nos. 41, 57, 80-81.)  In a published opinion, issued on May 13, 2004, the Eleventh Circuit

Court of Appeals affirmed this court's judgment on ERISA preemption.  See Anderson v.

UnumProvident Corp., 369 F.3d 1257 (11th Cir. 2004); (Doc. Nos. 83-84.)

        Finally, after a span of almost three years, this cause was ready to proceed to trial

on the merits of Anderson's claim for benefits under ERISA.  As indicated above,

Anderson prevailed on the merits.  See Anderson v. Unum Life Ins. Co. of America, 414

F. Supp.2d 1079 (M.D. Ala. 2006); (Doc. No. 95.)  The court now proceeds directly to a

determination of an appropriate award of attorney's fees and costs.

## IV.  DISCUSSION

Pursuant to 29 U.S.C. § 1132(g)(l), Anderson has filed a motion seeking $126,538.75 in attorney's fees and $6,986.51 in costs.[4]  As discussed below, Unum opposes the request for attorney's fees and raises several objections to Anderson's bill of costs.

### A.  Attorney's Fees

#### 1.  No Presumption of Award

The court, in its discretion, "may allow a reasonable attorney's fee and costs of action to either party."[5]  29 U.S.C. § 1132(g)(l).  The court begins by dispelling Anderson's implied assumption that, as the prevailing party in this litigation, she is entitled to a presumption that fees will be awarded.  (See Doc. No. 98 at 3-4.)  As support for her position, Anderson cites opinions from other circuits, but omits opinions from this circuit.  The Eleventh Circuit "has not adopted a presumption in favor of granting attorney's fees to a prevailing beneficiary" in an ERISA action.  Dixon v. Seafarers' Welfare Plan, 878 F.2d 1411, 1412 (11th Cir. 1989); see also Freeman, 996 F.2d at 1119.

---

[4] As noted in Wright v. Hanna Steel Corp., the Supreme Court Style Manual provides that "attorney's fees" is the preferred usage.  270 F.3d 1336, 1338 n.1 (11th Cir. 2001).

[5] 29 U.S.C. § 1132(g)(1) differs from other federal fee-shifting statutes, which permit the court to award fees only to the prevailing party.  See Freeman v. Continental Ins. Co., 996 F.2d 1116, 1119 (11th Cir. 1993).

*2. The Five Iron Workers Factors*

Although they argue different outcomes, the parties agree that, in determining

whether to make an award of attorney's fees under 29 U.S.C. § 1132(g), courts in the

Eleventh Circuit should be guided by the following factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability
> of the opposing parties to satisfy an award of attorney's fees; (3) whether an
> award of attorney's fees against the opposing parties would deter other
> persons acting under similar circumstances; (4) whether the parties
> requesting attorney's fees sought to benefit all participants and beneficiaries
> of an ERISA plan or to resolve a significant legal question regarding ERISA
> itself; and (5) the relative merits of the parties' positions.

McKnight v. Southern Life and Health Ins. Co., 758 F.2d 1566, 1571-72 (11th Cir. 1985)

(citing Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980) ("Iron

Workers")).[6]  These factors comprise the "'nuclei of concerns,'" but "'no one factor [is]

necessarily decisive.'"  Id. (quoting Iron Workers, 624 F.2d at 1266).

The Eleventh Circuit has advised "that it is helpful for district courts to refer

specifically to each of the Iron Workers factors in their analysis."  Freeman, 996 F.2d

at 1119.  The court heeds this advice and proceeds accordingly.

Based upon the foregoing "nuclei of concerns," Unum urges the court to exercise

its discretion and reject the fee request in its totality.  (Doc. No. 99 at 1.)  Anderson, of

course, argues to the contrary.

---

[6] In Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent
all decisions of the former Fifth Circuit issued prior to October 1, 1981.  See 661 F.2d
1206, 1209 (11th Cir. 1981) (en banc).

(a) The First Factor

The first <u>Iron Workers</u> factor requires the court to consider "the degree of the opposing parties' culpability or bad faith." <u>McKnight</u>, 758 F.2d at 1571 (citing <u>Iron Workers</u>, 624 F.2d at 1266). Anderson argues that the first factor "is the factor most obviously in favor of a fee award" and that Unum's "cursory and incomplete investigation demonstrates bad faith contrary to [Unum's] fiduciary duties." (Doc. No. 98 at 2, 4.) Unum, however, argues that it "had, in the very least, arguably valid grounds for denying [Anderson's] claim for disability benefits[,]" and that these arguable grounds negate Anderson's argument of bad faith. (Doc. No. 99 at 5.) For the reasons to follow, the court finds that there is evidence of culpable acts attributable to Unum and that, therefore, it need not determine whether Unum acted in bad faith.

In the context of examining an ERISA petition for attorney's fees, another district court in this circuit explained that "[b]ad faith usually is accompanied by the presence of fraud or deceit." <u>Clarke v. Unum Life Ins. Co. of Am.</u>, 14 F. Supp.2d 1351, 1357 (S.D. Ga. 1988). A party does not act in bad faith, however, merely because it advanced a position which did not prevail in the litigation. See <u>Freeman</u>, 996 F.2d at 1120 ("The fact that [the plaintiff] ultimately prevailed . . . does not mean that [the insured's] arguments were insupportable or made in bad faith."). Where an insurer has "an arguable basis" for denying a claim, it does not act in bad faith. <u>Florence Nightingale Nursing Serv., Inc. v. Blue Cross</u>, 41 F.3d 1476, 1485 (11th Cir. 1995). Similarly, a finding that an insurer was "in error" in denying a claim is insufficient, in and of itself, to rise to the level of bad

7

faith.  <u>Dixon</u>, 878 F.2d at 1413.  In other words, an insurer can reach an incorrect decision without harboring bad faith.

Evidence of bad faith is not the sole consideration under the first <u>Iron Workers</u> factor.  In <u>Wright</u>, the Eleventh Circuit upheld an attorney's fees award under ERISA against an employer, notwithstanding the absence of evidence of bad faith.  <u>See</u> 270 F.3d at 1345 (rejecting employer's argument that, where there is no demonstration of bad faith, "attorney's fees must be denied as a matter of law").  The Eleventh Circuit observed that the district court had identified acts of "'carelessness'" which demonstrated the employer's culpability and that the district court had appropriately considered this evidence in its overall determination of whether an award of attorney's fees was appropriate.  <u>Id.</u>  Notably, emphasizing that this circuit employs the disjunctive when referring to the two considerations enumerated in the first <u>Iron Workers</u> factor, the court reiterated that, "[u]nder the clear law of this circuit, a district court may consider 'the degree of the opposing party's culpability <i>or</i> bad faith' when deciding whether to award fees."  <u>Id.</u> (emphasis in original) (citing <u>Freeman</u>, 996 F.2d at 1119).  From <u>Wright</u> emerges the clear precept that bad faith and culpability are two distinct standards; in short, a losing ERISA party may be found culpable without having acted in bad faith.

The Oxford English Dictionary defines "culpable" as "deserving blame or censure, blameworthy."  Oxford English Dictionary (2d ed. 1989).  In the context of reviewing the district court's decision to deny attorney's fees in an ERISA action, the Third Circuit observed that in civil litigation "culpable conduct is commonly understood to mean

8

conduct that is 'blameable; censurable; . . . at fault; involving the breach of a legal duty or the commission of a fault," and a party is not culpable merely because it has taken a position that did not prevail in litigation.  McPherson v. Employees' Pension Plan of Am. Re-Ins. Co., 33 F.3d 253, 256-57 (3d Cir. 1994) (quoting Black's Law Dictionary (6th ed. 1990)).  In Wright, the Eleventh Circuit equated culpability, at least in part, with "carelessness."  270 F.3d at 1345.

Analysis of the first factor requires the court to delve, but only briefly, into the merits of its decision.  The court's finding that Anderson was "disabled" within the meaning of the long-term disability insurance policy at issue was based upon a *de novo* review of the record.  The court's *de novo* review included consideration of evidence which was not before the claims administrator at the time of the coverage determination. Namely, that evidence included the opinions rendered by Dr. Payne at her deposition testimony and constituted the primary evidence upon which the court relied in finding that Anderson was "disabled" and, thus, was denied the policy benefits to which she was entitled.  See Anderson, 414 F. Supp.2d at 1103-04.

Namely, at her deposition, Dr. Payne elaborated, clearly and in detail, upon the reasons for her diagnosis that, due to Anderson's pregnancy, Anderson was unable to "perform[] the material and substantial duties" of her physically rigorous job as a color sampler.  See id. at 1104.  Not only was Dr. Payne familiar with the physical requirements of Anderson's job and the twelve-hour shifts which Anderson worked, Dr. Payne also was

informed as to Anderson's medical history.  As previously observed by the court, in

rendering her medical opinion,

> Dr. Payne considered the totality of Anderson's physical condition arising
> from the pregnancy itself, such as Anderson's hyperemesis [treatment of
> which included four hospitalizations], as well as the effect that Anderson's
> other medical problems had on her pregnancy, such as Anderson's gastric
> bypass procedure and cervical dysplasia.  Dr. Payne also had knowledge of
> similar complications during Anderson's prior pregnancy, particularly the
> debilitating effects of nausea and vomiting that Anderson had experienced.

Id. (citing Dr. Payne Dep. at 13 (Ex. to Doc. No. 90).)  The court acknowledged, though,

that otherwise the "medical documentation which was before the claims administrator was

'arguably sparse.'"  Id.

Whether Unum or Anderson must bear the responsibility for the sparseness of the

administrative record is the issue which lies at the heart of the bad faith/culpability debate.

Unum and Anderson each point an accusing finger at the other concerning who is at fault

for the sparse administrative record.  Unum asserts that the documents submitted by

Anderson and Dr. Payne were incomplete and vague and did not manifest the nature of

Anderson's disability.[7]  Anderson, on the other hand, contends that Unum acted in bad

faith in the manner in which it handled and investigated her claim for benefits.  As support

for her argument, Anderson does not focus on the findings which formed the basis of the

---

[7] For example, Unum points out that the Attending Physician's Statement, which
accompanied Anderson's claim form and was filled out by Dr. Payne, was conclusory,
did not explain why Anderson was disabled "so early" in her pregnancy, contained
somewhat contradictory statements, and did not include, as requested, a description of the
restrictions or limitations which prevented Anderson from working.  (Doc. No. 99 at 3-5.)

court's judgment, but rather on the "additional observations" made by the court regarding Anderson's alternative argument for recovery predicated upon Unum's alleged inadequate investigation of Anderson's claim for benefits.  These "additional observations" are set out in Section IV.C. of the court's opinion on the merits.  See Anderson, 414 F. Supp.2d at 1106.

Although the court's "observations" carried a reprimanding tone, the court explicitly stated that its observations were not findings, but instead constituted the court's recognition that Anderson had advanced plausible arguments which would have to be addressed and overcome by Unum.  See id. ("The court observes, without making any express findings, that Anderson's position [concerning Unum's investigation of her claim] finds support from several facts in the record.").  The court did not delve into a full discussion of Anderson's arguments, and the court did not render a finding that Unum acted in bad faith in the manner in which it investigated Anderson's claim for benefits.  While the line between culpability and bad faith often may be difficult to discern, the court finds that it need not determine whether Unum's conduct crossed the line into the realm of bad faith because it finds that, at the very least, Unum is not blameless and that it acted culpably.  The court's finding that Unum is culpable arises from the "observations" which the court enunciated in its prior memorandum opinion and order.  See id.

To summarize three points, first, the court observed that, notwithstanding that the American College of Obstetricans and Gynecologists' policy statement on "pregnancy disability," which both parties cited as authoritative, provided that "[t]he onset,

11

termination and cause of the disability as related to pregnancy can only be determined by a

physician," id. at 1105, Unum rejected the only opinion which was rendered by a

physician, i.e., Dr. Payne.  It neither sought an independent medical examination by a

physician nor had a physician review Anderson's claim, but instead relied only upon a

nurse's review and the opinion of its claims person.  See id. at 1107.  In Anderson, the

court cited opinions which support the present conclusion that, based upon Unum's

foregoing actions, Unum is not free from fault in the manner in which it evaluated

Anderson's claim.  See 414 F. Supp. at 1107 (citing, among others, Levinson v. Reliance

Standard Life Ins. Co., 245 F.3d 1321, 1324 & 1326-27 & n.7 (11th Cir. 2001), in which

the Eleventh Circuit held that there was no reasonable basis for the administrator to reject

the treating physician's opinion where it did not conduct an independent medical

examination, but instead relied solely on the report of an in-house nurse and the opinion of

its claims person); see also Leva v. First Unum Life Ins. Co., No. 96 CIV 8590(DC), 1999

WL 294802, at *1-*2 (S.D.N.Y. May 11, 1999) (noting that "Unum is 'culpable' in the

sense that it did not consider [the plaintiff's] application with the care that she deserved,"

and that the only medical review of the claim was conducted by a nurse, who was the

claims examiner's mother).

Second, to the extent that some of the entries on the Attending Physician's

Statement, submitted by Dr. Payne, were conflicting, confusing or conclusory, the court

observed that a persuasive argument existed that Unum "should have sought clarification,

rather than issuing what appear[ed] to be a perfunctory denial" on the asserted ground of a

lack of objective medical evidence.  <u>Anderson</u>, 414 F. Supp.2d at 1107 n.26.  Third, the court recognized that there was evidence suggesting that Unum may have deviated from its usual and customary procedures in examining Anderson's claim.  <u>See id.</u> at 1108.

The foregoing "observations" are sufficiently troubling to the court to warrant a finding that Unum acted culpably in the manner in which it evaluated Anderson's claim for benefits.  Having considered the evidence as a whole, the court finds that the record reveals an investigation which, at the very least, was not as thorough as it should have been to provide an impartial determination.  The court, therefore, finds that factor one – the degree of Unum's culpability or bad faith – weighs in favor of awarding attorney's fees to Anderson.

### (b) The Second Factor

Under the second factor, Anderson asserts that the "capacity" of Unum, as "a large insurance company with a nationwide presence," to pay an award of attorney's fees "cannot seriously be doubted."  (Doc. No. 98 at 4.)  Unum does not dispute that "it likely has an ability to satisfy an award of attorney's fees."  (Doc. No. 99 at 5.)  The financial ability of Unum to satisfy an award of attorney's fees, therefore, is not seriously in contention and weighs in favor of an award of attorney's fees to Anderson.

(c) The Third Factor

Turning to the third factor, which focuses on the deterrent effect of an award of attorney's fees, Anderson and Unum advance competing positions.  Although recognizing the improbability that this single case could "forever ensure" that Unum or another insurer acts properly in the future, Anderson states that an award of attorney's fees "certainly would not hurt" toward that end.  (Doc. No. 98 at 4-5.)  Particularly given that ERISA does not permit punitive or extra-contractual damages, Anderson argues that a court's denial of attorney's fees "only encourages plan administrators to deny benefits, forcing each claimant to sue to enforce her rights," because the only risk to the insurer in improperly denying a claim is the possibility that after litigation it will have to pay those benefits.  (Id. at 5.)  Unum, on the other hand, contends that an award of attorney's fees against it "will have little effect on the conduct of Unum and other insurers."  (Doc. No. 99 at 6.)  It points to the "relatively small" amount of benefits at issue.  Unum argues further that it believed its decision was an "appropriate" one and that compelling it to pay Anderson's fees in addition to its own fees, which were substantial, would merely "be punitive" and would offer no deterrent value.  (Id.)

The Eleventh Circuit has recognized that, in ERISA cases, "the deterrent value of an award of attorneys' fees is high."  National Cos. Health Benefit Plan v. St. Joseph's Hosp., Inc., 929 F.2d 1558, 1675 (11th Cir. 1991), abrogated on other grounds, Geissal v. Moore Medical Corp., 524 U.S. 74 (1998).  The court explained that, if the insurer

14

did not have to pay the appellees' attorneys' fees, it would only be liable for what it should have covered before this litigation commenced.  With nothing to lose but their own litigation costs, other ERISA-plan sponsors might find it worthwhile to force underfinanced beneficiaries to sue them to gain their benefits or accept undervalued settlements.

Id.; Stvartak v. Eastman Kodak Co., 945 F. Supp. 1532, 1547 (M.D. Fla. 1996) (stating that "[w]ith little to lose but the amount that should have been paid without litigation, Kodak and other companies might be encouraged to force beneficiaries to sue them to receive their benefits"), aff'd without op., 144 F.3d 54 (11th Cir. 1998).

Here, the court has found that the manner in which Unum investigated and decided Anderson's claim for benefits renders Unum culpable.  Given this finding, the court concludes that awarding Anderson attorney's fees presumably will serve some deterrent value to the investigative methods employed by Unum to evaluate a beneficiary's claim and will provide some motivation for Unum to give careful consideration to the factual investigation of a claim.  Additionally, the court finds that the reasoning espoused in National Companies, above, applies equally in this case.  In sum, the court finds that the third Iron Workers factor weighs in favor of an award of attorney's fees to Anderson.

(d) The Fourth Factor

The fourth factor is whether the fee movant sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA. Anderson concedes that this action was not brought to benefit all participants of the plan

at issue, but disagrees with Unum that this "lawsuit did not resolve any significant legal questions" at the trial or appellate level.  (See Doc. No. 98 at 5); (Doc. No. 99 at 6).

While the court concludes that Anderson sought only individualized relief, as she readily admits, the court finds that Anderson's lawsuit has resulted in the resolution of legal issues which have the potential to be significant in other ERISA litigation.  In its opinion on the merits of Anderson's claim for benefits, this court arguably confronted at least two such issues.  First, Anderson raised the novel issue of what constitutes an authorized delegation of a claims administrator's discretionary authority to make claims decisions for purposes of determining whether de novo or the more deferential arbitrary and capricious standard of review applies.  See Anderson, 414 F. Supp.2d at 1095 ("The parties have not cited, and the court has not found, a published opinion from the Eleventh Circuit Court of Appeals explicitly addressing what constitutes a proper delegation.").  Ultimately, the court agreed with Anderson's position, finding an ineffective delegation of authority by Unum to UnumProvident and applying de novo review.  Second, the court's finding concerning the scope of the record for the court's review involved anything but a

run-of-the-mill analysis.[8]  See Anderson, 414 F. Supp.2d at 1100-01 (applying Kirwan v.

Marriott Corp., 10 F.3d 784, 788 (11th Cir. 1994), and distinguishing Williams v.

BellSouth Telecommunications, Inc., 373 F.3d 1132 (11th Cir. 2004)); see also Snider v.

Cingular Wireless Health and Welfare Benefits Plan for Non-Bargained Employees, No.

3:04-cv-198-J-32MMH, 2006 WL 2400952, *8 (M.D. Fla. 2006) (citing this court's

decision in Anderson to support its conclusion that "[a]n equally plausible reading" of

Williams, supra, is that Williams "presupposes the 'heightened arbitrary and capricious'

standard applies, and that the 'virtually all' refers only to cases where the conflict of

interest exists").

---

[8] Ultimately, after a review of the relevant law, the court agreed with Anderson that the court should apply a de novo standard of review to its consideration of her claim. The court concluded that, although the long-term disability insurance policy at issue conferred an express grant of discretionary authority upon Unum to determine Anderson's eligibility for benefits under the policy, Unum had delegated its decision-making authority to UnumProvident, an independent entity.  There, however, was not a corresponding provision in the plan documents which expressly permitted delegation. Absent an express provision in the policy authorizing Unum to delegate its decisionmaking authority, UnumProvident did not share the same discretionary authority as Unum to determine eligibility for benefits; hence, the de novo standard of review, rather than the deferential arbitrary and capricious standard of review, applied to the court's review of Anderson's benefits-denial claim.  See Anderson, 414 F. Supp.2d at 1094-1100.

As discussed at length in the court's prior opinion, the parties disagreed whether under de novo review, the evidentiary scope of the court's review could include evidence which was not before the claims administrator.  See id. at 1101.  After discussion and consideration of counsel's arguments and the law, the court concluded, based upon the holding in Kirwan, above, that de novo review permitted the court to consider "facts which were available, but not presented, to the administrator at the time of the coverage determination."  Id.  In this regard, the court explained why Unum's reliance on the multi-step analysis in Williams, supra, was misplaced.  See id. at 1101-03.

Moreover, although the court recognizes that the Eleventh Circuit concluded that Anderson's employer "clearly established and maintained an employee welfare benefits plan" for purposes of holding that ERISA preempted Anderson's state law claims, Anderson, 369 F.3d at 1263, the court cannot ignore that the Eleventh Circuit heard oral argument on Anderson's appeal and issued a lengthy and detailed published opinion on ERISA's requirement that an employer "establish or maintain" its plan. See id. at 1263-69. Undoubtedly, the Eleventh Circuit's thorough analysis provides litigants with further appellate guidance in navigating the ERISA preemption waters. Accordingly, the court finds that the fourth Iron Workers factor weighs in favor of awarding attorney's fees to Anderson

.

(e) The Fifth Factor

The court now has reached the final Iron Workers factor. The court ruled in Anderson's favor on the merits, finding that Unum's actions violated ERISA, and that judgment has not been appealed. Anderson, thus, also benefits from the court's consideration of the relative merits of the parties' positions.[9]

---

[9] The court notes that any responsibility which Anderson's counsel bears for the delay in the resolution of the case on the merits will be considered below in the determination of a reasonable attorney's fee award.

18

(f) Conclusion

The court has considered the five <u>Iron Workers</u> factors and has concluded that each one tips in favor of Anderson.  The court, therefore, finds that Anderson is entitled to an award of attorney's fees.  Unum challenges the requested amount of attorney's fees.  The court's analysis, thus, is not yet at an end.

3.  *Calculation of Reasonable Attorney's Fees*

In determining reasonable attorney's fees, the court's first step is to calculate the "lodestar" by multiplying an attorney's reasonably hourly rate by the number of hours reasonably expended to prosecute the litigation.  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433-34 (1983); <u>Association of Disabled Americans v. Neptune Designs, Inc.</u>, 469 F.3d 1357, 1359 n.1 (11th Cir. 2006); <u>Norman v. Housing Auth. of City of Montgomery</u>, 836 F.2d 1292, 1299 (11th Cir. 1988).  The reasonableness of attorney's fees awards is guided by consideration of the factors enumerated by this circuit's predecessor in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974).  <u>See</u> <u>Cable/Home Communication Corp. v. Network Productions, Inc.</u>, 902 F.2d 829, 853-54 (11th Cir. 1990).  The lodestar figure represents a presumptively reasonable fee.  <u>See</u> <u>City of Burlington v. Dague</u>, 505 U.S. 557, 562 (1992).

The second step in the fee calculation is to assess whether the presumptively reasonable lodestar should be adjusted.  <u>See</u> <u>Hensley</u>, 461 U.S. at 434.  The court may make any adjustments to the lodestar for any considerations not yet factored into the

lodestar calculation; for example, an adjustment may be made, either upward or downward, based upon "the degree of the plaintiff's success in the suit." Association of Disabled Americans, 469 F.3d at 1359 (citing Hensley, 461 U.S. at 435-36); Miller v. Kenworth of Dothan, Inc., 117 F. Supp.2d 1247, 1263 (M.D. Ala. 2000) (court may "adjust the lodestar, if necessary, to reflect a plaintiff's overall degree of success, making the award 'reasonable in relation to the results obtained'") (quoting Hensley, 461 U.S. at 440).

Anderson, as the fee applicant, "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Norman, 836 F.2d at 1303. That burden includes setting out time expenditures "with sufficient particularity so that the district court can assess the time claimed for each activity." American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999) (quoting Norman, 836 F.2d at 1303). On the other hand, Unum bears the burden of proving that a downward adjustment to the lodestar is warranted. See Dague, 505 U.S. at 562 ("The party advocating adjustment of the lodestar bears the burden of establishing that such an adjustment is necessary.").

(a) Reasonable Hourly Rate

Turning to the lodestar analysis, the court first addresses the hourly rate. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."

20

Norman, 836 F.2d at 1299.  Anderson has submitted a time sheet which identifies eight attorneys by name and by their status as either a partner or an associate, the number of hours they performed in connection with this case, and their hourly rates.  Unum has not objected to the hourly rates.  Given the absence of any protest by Unum, in unison with another court in this district, the court will apply the requested hourly rates "for purposes of this fee petition only."  Thompson v. Equifax Credit Info. Servs., Inc., No. Civ. A. 00-A-1468-S, 2003 WL 1579757, *7 (M.D. Ala. 2003) (Albritton, J.).

(b) Reasonable Hours

The court must inspect attorney's fees petitions and exclude those hours that are not "'reasonably expended,'" that is, hours which are "excessive, redundant, or otherwise unnecessary[.]"  Hensley, 461 U.S. at 434; see also Miller, 117 F. Supp.2d at 1255.  Unum has raised three specific objections to approximately ten hours billed by Anderson's counsel.

First, Unum objects to .7 hour pertaining to counsel's "review" of a 60 Minutes television program "regarding UnumProvident."  (Doc. No. 99 at 20.)  Unum argues that Anderson has not demonstrated how this program had any "bearing whatsoever on [Anderson's] claim for benefits in this case."  (Id.)  The court agrees.  The billing entry contains no description of the subject matter of the television show, rendering it impossible for the court to ascertain whether counsel's activity for this billed time was

necessary for litigating the merits of the case.  The court sustains Unum's objection and will exclude this time from the lodestar.

Second, Unum objects to 6.3 hours of time counsel spent "review[ing] internet documents on Unum" and engaging in telephone conversations with two attorneys who did not serve as counsel in this case.  (Id.)  The court finds that, as argued by Unum, there is insufficient detail regarding the purpose or nature of these telephone calls or the content of the internet documents.  Consequently, the court again is unable to assess whether these activities were "necessary" for litigating the case.  Unum's objection, therefore, is sustained.  These hours shall not be included in the lodestar calculation.

Third, the court sustains Unum's objection to three hours Anderson's counsel billed for "research" on February 25, 2003.  (Id.)  Because this billing entry likewise is vague, with no description or hint of what topic was researched, the court shall disallow compensation for these three hours.

Unum also raises a fourth objection.  In broad terms, Unum objects to what it contends are "block" and, relatedly, "vague" entries in counsel's billing records.  (Id. at 21 (lines 1 - 10).)  Without pinpointing a specific line item or particularizing an objection, Unum refers generically to pages 4 and 11-15 of Anderson's invoices as illustrative of entries which Unum contends Anderson recorded only in "block time."[10]  (Id., citing Pl.

---

[10] For clarification, the court notes that Unum has cited the electronic page numbers assigned by the clerk.

22

Attach. B to Doc. No. 98.)  The line entries on these pages which Unum has cited range from nineteen to thirty per page.

"Block" billing is defined as the practice of "lumping multiple tasks into a single entry of time[.]"  Cadena v. Pacesetter Corp., 224 F.3d 1203, 1214 (10th Cir. 2000). Having reviewed the billing entries to which Unum objects, the court observes that the majority of the line entries contain a single task performed for the time billed.  The court finds that, overall, the entries on these pages are sufficiently detailed and itemized so as to permit the court to assess how much time the attorney allotted to the enumerated task and whether the time billed was reasonable.  See, e.g., Hensley, 461 U.S. at 437 n.12 (noting that "counsel, of course, is not required to record in great detail how each minute of his time was expended.  But at least counsel should identify the general subject matter of his time expenditures.").  Alternatively, the court overrules Unum's "catch all" objection on the ground that it is insufficiently particularized.  See Duckworth v. Whisenant, 97 F.3d 1393, 1397 (11th Cir. 1996) ("Because reducing the hours claimed required the court's precision, the law in this circuit commands that both the proof of the hours spent in litigation and any corresponding objection posed be voiced with a similar exactitude.").  Accordingly, the court declines to strike or reduce the hours billed based upon Unum's general objection to alleged impermissibly vague "block" billing.

In sum, the court shall deduct ten hours from the lodestar on the ground that these hours either were unnecessary or described only vaguely, as set out above.  The monetary value of the sum of these hours is $2,325.00.

(c) The Lodestar

On page nine of her brief, Anderson sets out the hourly rates for each of the eight attorneys assigned to her case and the number of hours each worked on the case.  (Doc. No. 98 at 9-10.)  Multiplying the hourly rates by the number of hours results in fees totaling $126,538.75.  As set out in the preceding subsection, the court shall deduct $2,325.00 from Anderson's requested amount in order to arrive at the lodestar.  The lodestar, therefore, is $124,213.75.

(d) Adjustments to the Lodestar

The court now turns to an examination of whether the lodestar should be adjusted. Unum proffers two arguments in this regard, both of which arise from the principle in Hensley that the court may adjust the lodestar calculation proportionately to reflect the limited "degree of the plaintiff's success in the suit."  461 U.S. at 430.  The Hensley lens is a wide-angled lens which focuses on the outcome of all the different facets of the litigation, not just the end result.

As explained in Hensley, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry."  Id.  "There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results' obtained."  Id.  "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief."  Id.  Two questions must be answered in this situation.  "First, did the plaintiff fail to prevail on

24

claims that were unrelated to the claims on which he succeeded?"  Id.  Claims are related

if they share a "common core of facts" or have similar legal theories.[11]  Id. at 435.  There,

however, "is no certain method of determining when claims are 'related' or 'unrelated.'"

Id. at 437 n.12.

"Second, did the plaintiff achieve a level of success that makes the hours

reasonably expended a satisfactory basis for making a fee award?"  Id. at 434.  Where

there is limited success in the litigation, "the product of hours reasonably expended on the

litigation as a whole times a reasonably hourly rate may be an excessive amount," and the

latter is "true even where the plaintiff's claims were interrelated, nonfrivolous, and raised

in good faith."  Id. at 436.

(i) ERISA Preemption

Although Anderson prevailed on the merits, Unum contends that Anderson's

success is offset by the inordinate amount of time Anderson devoted to litigating the

ERISA preemption issue upon which she lost at both the trial and appellate levels.  Unum

asserts that the lodestar should not include any of the fees amassed by Anderson's counsel

during counsel's "nearly three-year futile struggle to avoid obvious ERISA preemption."

---

[11] Although Hensley involved a fee petition filed pursuant to 42 U.S.C. § 1988, "case law construing what is a 'reasonable' fee applies uniformly" to all federal fee-shifting statutes.  Daque, 505 U.S. at 562.

(Doc. No. 99 at 10, 14.)  According to Unum's best estimation, these fees total

approximately $54,854.25 of Anderson's overall fee request.[12]  (See id. at 8, 14-15.)

Before addressing Unum's contention, the court begins with the recognition that

Anderson prevailed on her ERISA claim to enforce her rights under the long-term

disability insurance policy at issue.  As the plaintiffs in Hensley, the court finds that

Anderson "obtained essentially complete relief."  461 U.S. at 431.  The court even goes so

far as to say that her relief was "significant," given that Anderson obtained all of the relief

which was available to her under the strictures of ERISA.  Id. at 440.  The fact, though,

that the relief obtained was significant does not end the court's inquiry.  "A reduced fee

award is appropriate if the relief, however, significant, is limited in comparison to the

scope of the litigation as a whole."  Id.  For the reasons to follow, the court agrees with

Unum that the results obtained by Anderson are limited when one compares the amount of

time Anderson's counsel focused on challenging the preemptive effect of ERISA which

the Eleventh Circuit essentially said was obvious, see Anderson, 369 F.3d at 1263, with

the amount of time Anderson's counsel devoted to litigating the merits of the actual

ERISA claim.

---

[12] Unum states that it was "difficult to identify with certainty each and every
billing entry that related to [Anderson's] fight against ERISA preemption."  (Doc. No. 99
at 8.)  Unum contends that its figure is conservative and "likely under-represents the
actual amount of attorney's fees that [Anderson's] counsel generated" on this issue.  (Id.)
The court notes that, in her brief, Anderson did not further elucidate on the precise
number of hours her attorneys expended on litigating the issue of ERISA preemption.

Turning to the first Hensley question pertaining to the "relatedness" of the claims, Anderson's ERISA claim and her state law claims (for fraud, concealment, breach of contract and bad faith) share a common core of facts: Anderson claimed that her pregnancy qualified as a disability under Unum's long-term disability insurance policy, but that Unum refused to pay her benefits. On the other hand, the legal theories are vastly different. Indeed, there are few, if any, legal similarities between Anderson's state law and ERISA claims. See, e.g., Johnson v. Watts Regulator Co., 63 F.3d 1129, 1131 (1st Cir. 1995) ("Preemption may cause potential state-law remedies to vanish . . . or may change the standard of review . . . or may affect the admissibility of evidence . . . or may determine whether a jury trial is available.").

Addressing the second Hensley inquiry and considering the litigation "as a whole," the court is mindful that the Eleventh Circuit concluded, in effect, that there was no room for debate on the issue of whether or not ERISA preempted Anderson's state law claims. As Unum aptly points out, the Eleventh Circuit held that Anderson's employer "plainly" and "clearly" "established or maintained" the plan at issue. Anderson, 369 F.3d at 1263, 1268-69. A decision from the Fifth Circuit Court of Appeals lends support to Unum's argument. In Life Partners Inc. v. Life Insurance Co. of North America, the plaintiffs filed an original complaint founded only on state law claims, but the defendants successfully argued that the claims were preempted by ERISA. See 203 F.3d 324, 326 (5th Cir. 1999). The plaintiffs then amended their complaint, prevailed on the ERISA claims, and moved for attorney's fees. Id. The Fifth Circuit held that the plaintiffs were limited to recouping

27

only those fees which they incurred after they amended their complaint to state a claim under ERISA.  Until that time, the defendant's preemption "defense was valid and meritorious."  Id.; see also Roy v. Forest County Potawatomi Group Health Dental Vision and Short Term Disability Plan, No. 03-C-1265, 2006 WL 416214, *3 (E.D. Wis. Feb. 22, 2006) (emphasis added) (disallowing a prevailing ERISA plaintiff to recover fees which were "related to '*obviously*' preempted state law claims") (emphasis added).  The court finds that Life Partners, *supra*, carries persuasive value in determining whether to make a downward adjustment to the lodestar, particularly given that in this case the Eleventh Circuit determined, in essence, that the question of ERISA preemption was not even a close call.

Here, the first three years of this litigation focused on Anderson's challenge to ERSIA preemption.  To recap briefly, Anderson's complaint, which was filed in state court in June 2001 and removed to this court in July 2001, was predicated only upon state law claims.  Thereafter, Anderson opposed Unum's defense of ERISA preemption (see, e.g., Doc. Nos. 8, 18, 28, 38), but on November 7, 2002, in a memorandum opinion and order, the court rejected Anderson's argument, finding that ERISA preempted the state law claims in the complaint.  (Doc. No. 39.)  Consequently, upon the court's directive that Anderson file an amended complaint to allege an ERISA claim or risk dismissal of this lawsuit, Anderson amended her complaint to allege an ERISA claim on November 18, 2002.  (Doc. No. 40.)  Anderson, however, persisted in her opposition to ERISA preemption, see *infra* footnote 16, and it was not until June 2004, when on interlocutory

appeal the Eleventh Circuit affirmed this court's judgment, that the question of ERISA's preemptive effect finally concluded with the Eleventh Circuit's holding that Anderson's employer "plainly" and "clearly" "established or maintained" the long-term disability insurance policy at issue. Anderson, 369 F.3d at 1263.

As set above, the court has "considered the relationship between the amount of the fee awarded and the results obtained." Hensley, 461 U.S. at 437. Based upon the Eleventh Circuit's clear pronouncement regarding the preemptive effect of ERISA over Anderson's state law claims, in conjunction with the reasoning underlying the Fifth Circuit's reduction of the lodestar in Life Partners, *supra*, the court finds that, through the Hensley wide-angled lens, it would be unjust to permit Anderson's counsel to recover the full amount of time expended pursuing the state law claims as a basis for recovery.[13]  In sum, the court finds that the attorney's fees Anderson incurred in fighting ERISA preemption is excessive when weighed against the nearly indisputable fact that ERISA controlled the outcome of this litigation. The court carefully has reviewed counsel for Anderson's billing entries. As Unum has pointed out, it is not possible to extract from the record the exact time Anderson's counsel devoted to the battle against ERISA preemption; the time, though, was extensive.

---

[13]  In reaching its findings, the court also has considered whether Anderson's counsel acted in bad faith in persisting in the challenge to ERISA preemption. Notwithstanding that hindsight has proven that counsel for Anderson's position was short-sighted, the court does not find any evidence or suggestion of bad faith in the record.

After careful consideration and in the court's equitable discretion, the court finds that a 40 percent reduction of the lodestar proportionately reflects Anderson's lack of success.  Accordingly, the court shall reduce the lodestar by 40 percent.  Roy, No. 03-C-1265, 2006 WL 416214, *3 (rejecting request in ERISA action for fees related to "obviously" preempted state law claims and finding that, "[b]ecause such work is not calculable with precision, however, [the court would] simply reduce plaintiff Kelly Roy's attorney's fees by 30%").  Forty percent of the lodestar, previously calculated as $124,213.75, is $49,685.50.  The court, therefore, shall deduct $49,685.50 from the lodestar of $124,213.75, which results in an adjusted lodestar of $74,528.25.

### (ii) Unum's Rule 68 Offer of Judgment

On September 3, 2002, Unum served on Anderson an offer of judgment, via United States first-class mail.  (See Offer of Judgment, attached as Ex. A to Doc. No. 99.)  The offer provided as follows:  "The Defendant, Unum Life Insurance Company of America, Inc., offers to allow judgment to be taken against it by Plaintiff, for Five Thousand Eight Hundred Ten and 82/100 Dollars ($5,810.82), with costs now accrued."  (Id.)  On advice of counsel, Anderson rejected the offer of judgment shortly after its receipt.  (See Pl. Attach. B at 15 of 29.)  Approximately three-and-a-half years later, on February 13, 2006, this court entered its judgment on the merits, awarding Anderson benefits in the amount of $6,099.97.  (See Doc. No. 96.)

Unum contends that the lodestar should be reduced further based on the circumstances surrounding Anderson's rejection of its Rule 68 offer of judgment. Unum argues that, although technically the strictures of Rule 68 are not satisfied, its offer of judgment was substantial. In this regard, Unum points out that the judgment Anderson obtained on her ERISA claim in the amount of $6,099.97 is only marginally higher than its rejected offer of judgment of $5,810.82, and that, when considering "the time-value of money," the offer of judgment arguably is equal to the award Anderson ultimately obtained from the court. (Doc. No. 99 at 16.) Unum asserts that the "results" obtained by Anderson "hardly demonstrate a justification for the additional $87,170.75 in fees that [Anderson's] counsel billed during the nearly three and a half years of litigation after Unum made the offer of judgment[.]" (Id.) Consequently, Unum asserts that the court "should reduce the amount of any award based on the lack of success that [Anderson] and her counsel obtained after rejecting Unum's offer of judgment." (Id. at 19.)

The court agrees with Unum that, in determining whether an attorney's fee award is excessive, the court may consider whether a rejected Rule 68 offer of judgment adversely impacted the plaintiff's success, even where, as here, the requirements of Rule 68 of the

31

Federal Rules of Civil Procedure have not been satisfied.[14]  Although the court did not find a published opinion from the Eleventh Circuit which addressed the precise issue raised by Unum, and none was cited by Unum, the court's conclusion is compatible with decisions reached by the Seventh and Tenth circuits.

In Moriarty v. Svec, involving a dispute under ERISA, the Seventh Circuit held that a settlement offer, which is "substantial," "should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply."  233 F.3d 955, 967 (7th Cir. 2000) (citing Sheppard v. Riverview Nursing Center, Inc., 88 F.3d 1332 (8th Cir. 1996)).  "Attorney's fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party, and thus a reasonable attorney's fee may be less than the lodestar calculation."  Id. (citing Marek v. Chesny, 473 U.S. 1, 11 (1985)).  The Seventh Circuit held that the determination of whether an offer is substantial is addressed to the discretion of the district court.  See id.  To guide the district court's discretion, the Seventh Circuit provided that "an offer is substantial if . . . the

---

[14] Rule 68 states, in relevant part, that

> [a]t any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. . . .  An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs.  If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Fed. R. Civ. P. 68.

offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party." Id.  The court continued:  "In such circumstances, a district court should reflect on whether to award only a percentage (including zero percent) of the attorney's fees that were incurred after the date of the settlement offer." Id.  At the same time, the Seventh Circuit also "stress[ed]" that a district court is not required to make a downward adjustment to the lodestar based upon a rejected settlement offer.  Id.  Rather, "a substantial offer is only one of the factors that a district court should evaluate in making an attorney's fee award, and (absent an offer complying with Rule 68 where that Rule applies) is not necessarily determinative." Id.

The Tenth Circuit reached a similar conclusion in Dalal v. Alliant Techsystems, Inc., 182 F.3d 757 (10th Cir. 1999).  It held that, while Rule 68 did not bar an award of post-offer attorney's fees under the ADEA, "the reasonableness calculation must take the fact of the Rule 68 offer into account." Id. at 761.  In Dalal, the Tenth Circuit held that the district court did not abuse its discretion in "award[ing] only half of the fees generated after the Rule 68 offer to reflect plaintiff's limited success." Id. at 761-62.

Applying the foregoing principles to the facts at hand, the court finds that Unum's Rule 68 offer of judgment was substantial for three reasons.  First, the difference between the rejected offer ($5,810.82) and the amount Anderson ultimately recovered ($6,099.97) was minimal.  Second, the offer of judgment allowed Anderson to recover her accrued costs in addition to the monetary sum offered.  In Marek, the Supreme Court of the United States held that "with costs then accrued," the language in Rule 68 and substantially the

same language in Unum's offer of judgment, means that accrued costs are *in addition to* the sum offered.  See 473 U.S. 1, 6 (1985).  Third, Anderson would have been entitled to petition the court for an award of reasonable attorney's fees, as permitted under ERISA and not excluded in the offer of judgment.  See 29 U.S.C. § 1132(g)(1).  Therefore, had Anderson accepted Unum's offer of judgment she would have received roughly the benefits under the policy, and, significantly, she would not have been deprived of recouping her costs and reasonable attorney's fees.

Having found that the offer of judgment was substantial in relation to the judgment Anderson obtained from the court and having considered the totality of the litigation which ensued after Anderson's rejection of that offer, the court finds a measure of unreasonableness in counsel for Anderson's recommendation to Anderson that she reject the offer of judgment and continue to litigate.  Based upon the particular circumstances in this case, the court finds that it would be unreasonable to award Anderson's counsel all of the attorney's fees incurred after the rejection of the offer of judgment.[15]  The court now must determine the amount of the downward adjustment.

---

[15] The court notes that, in Haworth v. State of Nevada, a case arising under the Fair Labor Standards Act ("FLSA"), the Ninth Circuit warned that "clients who refuse a Rule 68 offer should know that their refusal to settle the case may have a substantial adverse impact on the amount of attorney fees they may recover for services rendered after a settlement offer is rejected."  56 F.3d 1048, 1052 (9th Cir. 1995).  "Just because a plaintiff has an FLSA violation in her pocket does not give her a license to go to trial, run up the attorney fees and then recover them from the defendant."  Id.  To some degree, the court finds that the Ninth Circuit's words in Haworth, *supra*, ring true in this case.

Here, the fees generated after the rejection of the Rule 68 offer totaled approximately $80,508.75.  (See Doc. No. 99 at 20.)  As recognized by Unum, however, more than half of those fees pertained to Anderson's challenge to ERISA preemption.[16] The court already has reduced the lodestar based upon this consideration, and the court declines to reduce those fees any further based on the present objection.  Approximately $37,710.00 of the $80,508.75 figure, however, was not related to fighting ERISA preemption.  (See id. at 20 n.16.)  The court will not disallow the $37,710.00 in fees in their entirety; however, exercising its discretion after careful scrutiny of the record, the court finds that it is appropriate to reduce these fees substantially, namely by 80 percent. Eighty percent of $37,710.00 equals $30,168.00.  The court, therefore, shall deduct $30,168.00 from the reduced lodestar, calculated in the previous subsection as $74,528.25. $74,528.25 minus $30,168.00 equals $44,360.25.  Accordingly, based on the foregoing, the court finds that $44,360.25 is a reasonable attorney's fee award in this case.

---

[16] To illustrate, during the time frame that Anderson received and rejected Unum's offer of judgment, a summary judgment motion was pending on the issue of ERISA preemption, and the parties were in the process of garnering evidence in support of their respective positions.  On November 7, 2002, in a memorandum opinion and order addressed to the summary judgment motion, the court found that ERISA governed the long-term disability insurance policy at issue and permitted Anderson leave to amend her complaint to allege a claim under ERISA.  (Doc. No. 39.)  Anderson filed her amended complaint, alleging a claim for benefits under ERISA, on November 18, 2002.  (Doc. No. 40.)  Subsequently, Anderson moved the court to certify its summary judgment ruling as a final judgment for purposes of permitting Anderson to appeal the court's ruling on ERISA preemption.  (Doc. No. 41.)  The court denied Anderson's motion (Doc. No. 44), but, on March 26, 2003, granted Anderson's motion for reconsideration of that denial.  (Doc. Nos. 57, 62.)  Anderson appealed, and the Eleventh Circuit affirmed.  See Anderson v. UnumProvident Corp., 369 F.3d 1257 (11th Cir. 2004); (Doc. Nos. 83-84.)

B. <u>Costs</u>

In its prior memorandum opinion and order of February 13, 2006, the court taxed costs against Unum.  Anderson has submitted a bill of costs, in which she seeks $6,986.60 in costs for the following items:  filing fees in the amount of  $200.00; photocopying expenses in the amount of $1,030.44; deposition costs totaling $4,283.15; and "other costs" for postage, mileage and lodging expenses in the amount of $1,473.01.  (Doc. No. 98 at 10 & Attach. B.)

Costs are taxable only if they are specifically authorized by statute.  <u>See</u> <u>U.S. EEOC v. W & O, Inc.</u>, 213 F.3d 600, 620 (11th Cir. 2000) (citing <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 445 (1987) ("Crawford")).  In this ERISA action, the costs statute which governs is 28 U.S.C. § 1920.  <u>See Crawford</u>, 482 U.S. at 445; <u>Holland v. Valhi Inc.</u>, 22 F.3d 968, 979 (10th Cir. 1994); <u>see also</u> <u>Cline v. Home Quality Mgmt., Inc.</u>, No. 01-9016-CIV-MOORE, 2005 WL 1972539, *5 (S.D. Fla. July 26, 2005) ("[c]osts allowed under ERISA are the same costs that are permitted under 28 U.S.C. § 1920") (citing <u>Agredano v. Mutual of Omaha Cos.</u>, 75 F.3d 541, 544 (9th Cir. 1995)).  As set out below, Unum raises several objections to Anderson's bill of costs.  For the reasons to follow, the court finds that most of the costs for which Anderson requests reimbursement are not compensable.

Unum argues that Anderson's requested costs for postage, mileage and lodging are not recoverable.  (Doc. No. 99 at 22.)  The court concurs, as these costs are not enumerated in § 1920.  <u>See</u> 28 U.S.C. § 1920; <u>Scelta v. Delicatessen Support Servs., Inc.</u>,

203 F. Supp.2d 1328, 1339-40 (M.D. Fla. 2002).  The court, thus, shall deduct these

expenses, which total $1,473.01, from the costs award.

Unum also contends that Anderson is not entitled to full reimbursement for

photocopying and deposition costs.  Absent proof from Anderson that the deposition and

photocopying costs were sufficiently related to litigating the successful ERISA claim[17] and

given that most of the requested deposition and photocopying costs post-date the offer of

judgment, the court agrees with Unum that it is appropriate to reduce Anderson's

photocopying and deposition costs to reflect Anderson's overall limited success.  (See

Doc. No. 99 at 23); Cummings v. Connell, 316 F.3d 886, 899 (9th Cir. 2003) (holding that

"the district court *may* reduce costs to reflect limited success on the merits") (emphasis in

original).  The court shall reduce the requested deposition and photocopying costs by a

percentage equal to the reduction the court made to the lodestar.  See Thompson, Civ. A.

00-A-1486-S, 2003 WL 1579757, *7 (reducing the plaintiff's expenses by the same

percentage the court reduced the attorney's fees to reflect "the overall success of

[plaintiff's] efforts").  The court previously made two downward adjustments to the

lodestar, reducing it overall by approximately 64 percent.  The photocopying and

deposition costs total $5,313.59 ($1,030.44 plus $4,283.15).  Sixty-four percent of

$5,313.59 is $3,400.70.  The court, thus, deducts $3,400.70 from $5,313.59, which equals

---

[17] The court notes that none of the requested deposition and photocopying costs
were incurred after the Eleventh Circuit ruled on May 13, 2004, that ERISA preempted
Anderson's state law claims.  See Anderson v. UnumProvident Corp., 369 F.3d 1257 (11th
Cir. 2004).

$1,912.89.  Accordingly, the court will permit Anderson to recover deposition and photocopying costs in the amount of $1,912.89.

In sum, the court approves Anderson's bill of costs in the amount of $2,112.89. This figure includes the filing fee in the amount of $200.00 and deposition and photocopying costs in the amount of $1,912.89.

## V.  CONCLUSION

In ruling on Anderson's present motion for attorney's fees, the court initially examined the five Iron Workers factors and concluded that Anderson's counsel was entitled to an award of reasonable attorney's fees in the case.  The court then calculated the lodestar.  The court sustained Unum's objections to $2,325.00 in attorney's fees requested by Anderson's counsel, and, thereafter, arrived at a lodestar figure of $124,213.75.  The court then made two downward adjustments to the lodestar, reducing it overall by $79,853.50, or approximately 64 percent.  First, the court found that the lodestar was excessive when compared to the amount of time Anderson devoted to challenging what the Eleventh Circuit held was an obvious case of ERISA preemption. Consequently, the court reduced the lodestar again by $49,685.50.  Second, the court concluded that the lodestar was excessive given the limited success Anderson obtained after she rejected Unum's offer of judgment and, thus, reduced the lodestar by $30,168.00. After making these adjustments, the court concluded that $44,360.25 was a reasonable attorney's fee award.

38

Prompted by Unum's objections, the court also examined Anderson's bill of costs. For the reasons stated herein, the court reduced Anderson's bill of costs from $6,986.60 to $2,112.89.

## VI.  ORDER

Accordingly, it is CONSIDERED and ORDERED that Plaintiff Donya Leigh Anderson's motion for attorney's fees and costs be and the same is hereby GRANTED to the extent that Plaintiff shall HAVE and RECOVER from Defendant Unum Life Insurance Company of America the sum of $44,360.25 in attorney's fees and $2,112.89 in costs, for a total of $46,473.14, for which let execution issue.

DONE this 22nd day of February, 2007.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE